IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Taylor Made Express, Inc.,

    Plaintiff,

v.

Brandy Kidd, *et al.*,

    Defendants.

Case No. 21 C 2903

Judge Jorge L. Alonso

## Memorandum Opinion and Order

Defendant Brandy Kidd has moved in limine to (1) prevent Plaintiff Taylor Made Express, Inc. ("TME") from claiming damages at trial for its remaining breach-of-fiduciary-duty claim except those for disgorgement of Kidd's salary and (2) strike TME's jury demand. For the below reasons, the Court grants in part and denies in part Kidd's motion. TME may not claim damages in its affirmative case except for disgorgement of profits. The Court also strikes TME's jury demand as to its remaining claim and as to Kidd's counterclaim under the Illinois Wage Payment and Collection Act but not as to Kidd's breach-of-contract counterclaim.

## Background

In May 2021, TME sued Kidd and others for trade-secrets misappropriation, breach of a fiduciary duty of loyalty, fraud, conspiracy, and other claims after Kidd resigned from TME to start a competing freight broker company, Top Shelf Expediting LLC ("Top Shelf"). (ECF No. 1.) Kidd denied the allegations and brought counterclaims against TME for violating the Illinois Wage and Payment Act and breach of contract for allegedly not paying Kidd the wages she was due. (ECF No. 34.)

Following discovery, the Court dismissed all of TME's claims except its breach-of-fiduciary-duty claim against Kidd. (ECF No. 224.) The Court also granted Kidd's motion to exclude testimony of TME's damages expert and excluded the expert's opinions regarding TME's affirmative damages. (*Id.*) A jury trial on TME's remaining breach-of-fiduciary-duty claim and on Kidd's counterclaims is scheduled for December 10, 2024.

Kidd has filed a motion in limine on two grounds. First, it claims TME has submitted a new theory for legal damages which is precluded in light of TME's prior representations and the Court's order precluding the opinions of TME's damages expert, and that TME may seek only disgorgement of Kidd's compensation as equitable relief for its breach-of-fiduciary-duty claim. Second, Kidd asks the Court to strike TME's purported jury demand as to all remaining claims—TME's breach-of-fiduciary-duty claim and Kidd's statutory and breach-of-contract counterclaims. TME opposes the motion, which the Court now considers.

## Discussion

The Court considers first whether to strike legal TME's damages claim and then whether TME is entitled to a jury trial on its affirmative claim and on Kidd's counterclaims.

1.  **TME's Requested Damages**

In its August 2, 2021, Rule 26 disclosure statement, TME stated the value of its damages "will be the subject of expert opinion but is estimated at $7.5 Million Dollars" and would also include "amounts overpaid to Ms. Kidd" and "salary paid during the period employees were working on behalf of Top Shelf," and that "TME will retain a damages expert after factual discovery is complete and submit a report itemizing all damages." (ECF No. 237-1 p. 5.) TME has not amended its disclosure statement.

At deposition, TME's Rule 30(b)(6) corporate designee regarding damages and then-President and owner, Tim McDonald, testified that the only damages he was aware of for TME were those provided in TME's damages expert report—he offered no other grounds or evidence for damages. (ECF No. 138 ¶ 96.)

On March 30, 2022, TME's damages expert, Stephen VanderBloemen, issued his damages report that, by TME's representations, contained TME's damages theory. (ECF No. 138-8 pp. 135–42.) Specifically, as to TME's damages related to its affirmative claims including Kidd's alleged breach of her fiduciary duty of loyalty, VanderBloemen calculated a total lost value to TME of $3,642,100 allegedly caused by Kidd and her co-defendants. (*Id.* pp. 139–40, 142.) To calculate this, VanderBloemen used a multiple of TME's normalized earnings and discounted present value of the normalized earnings, based on TME's prior earnings, to which he applied various additional adjustments. (*Id.*) VanderBloemen's calculations, and thus TME's damages theory, were not based on financial data from Top Shelf or Hurley Logistics ("Hurley"), the companies through which Kidd billed clients after resigning from TME. (*See id.*) The Court ultimately excluded VanderBloemen's damages opinions as unreliable because he and TME did not adequately explain why he applied certain adjustments and values, either in his report or at deposition. (ECF No. 224 at 31–34.) After the Court's ruling, TME did not seek leave to present a new expert opinion regarding damages or to otherwise amend its damages-related disclosures.

Due to TME's repeated commitments that VanderBloemen's opinions represent the entirety of its damages theory for is breach-of-fiduciary-duty claim, and the Court's exclusion of those opinions, TME effectively has no damages theory for lost profits to present at trial—it may pursue only disgorgement of Kidd's compensation as an equitable remedy.

3

Evidently, TME now intends to seek approximately $3 million in damages for lost profits at trial. Though TME has not explained how it plans to do so, it may attempt to point to financial data from Top Shelf and Hurley reflecting the business Kidd generated after leaving TME as its own lost business. But nowhere did VanderBloemen's report—which TME represented contained its lost-profits damages theory—calculate damages based on anything other than TME's own prior financial data. Though VanderBloemen listed Hurley's financial data among the materials he considered (it is unclear whether he considered Top Shelf's financial data too), it played no part in his analysis and calculations—which, at any rate, were excluded by the Court as unreliable.

TME thus is attempting to inject a new damages theory in the final weeks before trial, without explanation, notice, or proper grounds. In the months since the Court excluded VanderBloemen's damages opinions, TME did not seek leave to present a revised damages expert opinion or otherwise notify Kidd that it would attempt to present a new, purportedly valid theory at trial. TME has effectively waived a lost-profits damages theory on its breach-of-fiduciary-duty claim at trial and may seek only disgorgement of Kidd's salary for that claim, which the parties agree survived the Court's prior rulings and has been preserved. TME claims it should be allowed to determine damages "the old-fashioned way" by presenting whatever evidence it wants at trial, but the bygone era it apparently has in mind predates the Federal Rules of Civil Procedure and controlling caselaw, which require parties to timely disclose their damages theories, follow their own representations, ask for permission to offer new theories after discovery has closed, and proceed to trial only on properly disclosed theories. *See* Fed R. Civ. P. 26(a)(1)(A)(iii), (a)(2), 37(c)(1); *Pittsfield Dev., LLC v. City of Chicago*, No. 17 CV 1951, 2021

WL 8314423, at *5–7 (N.D. Ill. Nov. 15, 2021) (collecting cases). The Court therefore precludes TME from requesting legal damages at trial.[1]

### 2. TME's Jury Demand

Next, Kidd argues the Court should strike TME's jury demand because TME's only remaining claim—breach of fiduciary duty of loyalty—is an equitable one and not entitled to a jury trial, nor is Kidd's counterclaim under the Illinois Wage Payment and Collection Act, and because TME did not properly demand a jury trial for Kidd's breach-of-contract counterclaim. The Court agrees as to TME's breach-of-fiduciary-duty claim and Kidd's Illinois statutory counterclaim but disagrees as to Kidd's breach-of-contract counterclaim.

#### A. TME's breach-of-fiduciary-duty-of-loyalty claim

The Seventh Amendment guarantees a right to a jury trial in "[s]uits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. Because of a historical distinction in English law courts between suits involving legal rights and remedies and those involving equitable rights and remedies, "a party has a right to a jury trial if its case is more similar to cases that were tried in courts of law than to suits tried in courts of equity." *Overwell Harvest, Ltd. v. Trading Techs. Int'l, Inc.*, 114 F.4th 852, 860 (7th Cir. 2024). To make that determination, the Court first compares the action to historical English actions, then examines the remedies sought to determine whether the action is legal or equitable in nature. *Id.*

Breach of fiduciary duty traditionally is an equitable claim without a right to a jury trial, and the disgorgement of Kidd's compensation is an equitable, not a legal, remedy. *See Client Funding Sols. Corp. v. Crim*, 943 F. Supp. 2d 849, 856 (N.D. Ill. 2013). Thus, TME it is not

---

[1] As explained below, TME may not seek punitive damages because it cannot seek compensatory damages.

5

entitled to a jury trial for its equitable claim unless it also seeks a legal remedy for it. TME points out that it requests both compensatory damages for lost business and punitive damages, which "are the traditional forms of legal relief." *Overwell Harvest*, 114 F.4th at 861; *see also id.* at 862 ("[U]nless the plaintiff is not seeking legal relief, its request for some equitable relief is not dispositive of its right to a jury trial on the legal issues in its case. And because Overwell sought clear legal relief in addition to equitable relief, the district court erred by barring it from presenting its case to a jury." (citation omitted)). But as described above regarding TME's requested damages, TME has no valid compensatory damages theory following the exclusion of its damages experts' opinions regarding lost profits and its failure to properly disclose an alternative damages theory. And without a valid claim for compensatory damages, TME also cannot pursue punitive damages. *Capitol Indem. Corp. v. Elston Self Serv. Wholesale Groceries, Inc.*, 551 F. Supp. 2d 711, 729 (N.D. Ill. 2008) ("For Illinois common law claims . . . punitive damages may not be recovered in the absence of compensatory damages." (cleaned up)).

  TME thus cannot pursue legal remedies for its breach-of-fiduciary-duty claim at trial but instead may seek only disgorgement as an equitable remedy. Because TME's claim and requested relief is equitable only, it does not trigger a jury-trial right and the Court accordingly strikes TME's jury demand for its breach-of-fiduciary-duty claim.

### B.  Kidd's Illinois Wage Payment and Collection Act counterclaim

  TME does not dispute that Kidd's statutory wage counterclaim is not entitled to a jury trial—the Court therefore strikes TME's jury demand to the extent it covers that claim. *See Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 359 Ill. App. 3d 718, 725, 834 N.E.2d 966 (2005).

### C. Kidd's breach-of-contract claim

The parties agree that Kidd's breach-of-contract counterclaim is legal, not equitable, but Kidd claims that TME waived its right to a jury trial on that counterclaim because though TME demanded a jury in its complaint, it did not submit a separate jury demand as to that counterclaim.

The Court disagrees. TME's complaint included a general demand for a jury, which "will be interpreted as a demand for a jury trial on all issues in the case triable by a jury." *Horwitz v. Alloy Auto. Co.*, 677 F. Supp. 564, 566 (N.D. Ill. 1988); (ECF No. 1 p. 23). "Thus . . . a second demand need not be made after the filing of a counterclaim to assure a jury trial on issues raised in the counterclaim or reply." *Id.* TME's general jury demand in its complaint therefore extended to Kidd's breach-of-contract counterclaim and entitles it to a jury trial on that claim. *See id.* at 567 (upholding jury demand for breach-of-contract counterclaim where the plaintiffs made a general jury demand before the counterclaim was asserted).

Accordingly, TME is entitled to a jury trial on Kidd's breach-of-contract counterclaim, but not as to TME's breach-of-fiduciary-duty claim or Kidd's statutory counterclaim.

## Conclusion

The Court therefore grants in part and denies in part Kidd's motion in limine to strike TME's jury demand and conform TME's damages (ECF No. 236). At the upcoming hearing on November 26, 2024, the parties shall be prepared to address any updates or remaining issues in light of this order, including as to their pending motion to postpone trial (ECF No. 247) and whether TME still demands a jury trial for Kidd's breach-of-contract counterclaim and, if so,

7

how best to coordinate a jury trial on that counterclaim with a bench trial on the parties' other remaining claims.

SO ORDERED.                                              ENTERED: November 20, 2024

_____
**HON. JORGE ALONSO**
**United States District Judge**